## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JOHN DOE, a pseudonym,

       Plaintiff,

vs.                            CASE NO.:  6:24-cv-00034-WWB-RMN

GUTTERIDGE JEANCHARLES, M.D., P.A.,
a Florida Corporation, and
GUTTERIDGE JEAN-CHARLES, M.D.,
an individual,

       Defendants.

_____/

### DEFENDANTS' MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS PLAINTIFF'S COMPLAINT

**COME NOW** Defendants, Gutteridge JeanCharles, M.D., P.A., a Florida professional service corporation, and Gutteridge Jean-Charles, M.D., and move to strike or, alternatively, dismiss Plaintiff's Complaint, stating:

### I. BACKGROUND AND FACTS

### Summary of Case

1.      This case is an example of "No good deed goes unpunished."  In it Dr. Jean-Charles, a humanitarian who provides a great deal of charitable medical services to the local community through his charitable foundation, and who also provides specialized medical teaching assistance to foreign medical graduates seeking to come to the United States to practice medicine, is being sued by a male physician that he tried to help.

2.      Dr. Jean Charles, himself an immigrant from Haiti, through his medical practice and through JC Medical Foundation, Inc., provides unpaid observerships (also called "external clinical rotations" or "externships"), listed on the American Medical

Association's website.  The Plaintiff, the graduate of a top medical school in Egypt, who had previously been a general surgery medical resident in New York City, failed to complete his first year of residency training. He remained in the United States illegally when his J-1 visa expired on December 31, 2019.  Several years later, in 2022, he sought assistance from Dr. Jean-Charles.  When he first contacted Dr. Jean-Charles, he falsely told Dr. Jean-Charles that he had a green card, but later admitted that he did not. (Complaint, Paras. 23 & 45).  The Plaintiff could not have been legally employed in the United States at that time by anyone and he knew that.

## Background and Facts

3.     The Plaintiff filed the Complaint under the pseudonym "John Doe"[1] alleging a number of false and egregious misdeeds and misconduct on the part of Defendants.

4.     The Plaintiff is actually known to the Defendants to be a male medical doctor, approximately 31 years old, who graduated from one of the top medical schools in Egypt,[2] was accepted into a general surgery residency program at Brookdale Medical Center in New York City and came to the to the United States in 2018 to become a general surgeon. He is believed to have entered the United States on a J-1 visa, under sponsorship by and through the Educational Commission for Foreign Medical Graduates ("ECFMG").

5.     In 2019 Plaintiff was either terminated from or dropped out of his general

---

[1]     Plaintiff filed using a pseudonym even though there is no statute, rule or order authorizing such filing, in violation of Rule 10(a), Federal Rules of Civil Procedure, and Local Rule 1.11.

[2]     The pseudonymous complaint refers to him incorrectly as an "Immigrant Medical Graduate" [sic] using the acronym "IMG" (Compl. para.2).  However, the acronym "IMG" is universally used within the medical community in the United States to refer to and mean "international medical graduate."

surgery residency program in New York City.  He only received eleven (11) months credit for his twelve (12) month first year of general surgery residency training.

6.       Because of this, Plaintiff's J-1 visa would have remained valid only until December 31, 2019.  After December 31, 2019, it is believed that Plaintiff remained in the United States illegally and sought to obtain employment illegally, not having a visa or the right to work in the United States.  According to the complaint, he was apparently looking for a wife during this period of time (Paras 18-19)[3], so that he could obtain a green card and legally remain in the U.S.  At the time of this contact with the Defendants in 2022, the Plaintiff had neither one.  (Para. 45.)

7.       The complaint misleadingly states: "[Plaintiff was] without work authorization, he was not able to "match" a residency program [sic]" (Para. 23.).  This is misleading because Plaintiff was without work authorization; however, it was because he had lost his J-1 visa because of his termination from his general surgery residency program in New York in 2019.  He was unable to "match" into another residency program, because he had been terminated from his first residency program.  If he had "matched" into another residency program, then the ECFMG would have sponsored him for another J-1 visa.

8.       What is clear, however, is that at all times relevant to the allegations in the complaint, when Plaintiff was seeking a relationship with the Defendants, he was in the United States illegally and was "without work authorization."

9.       Defendant Dr. Jean-Charles is himself an international medical graduate (IMG) from Haiti, and has an office practice in Orlando, Florida.  Since becoming a

_____

[3]       References will be to Paragraphs of the Complaint in this case, unless specifically indicated otherwise.

physician in the United States, he has dedicated himself to assisting other international medical graduates seeking to become licensed physicians and medical residents in the U.S.

10.    Defendant Gutteridge JeanCharles, M.D., P.A., is a separate, professional service corporation, incorporated under the laws of the state of Florida.  It is a large medical practice which has a number of employees, including at least three (3) other licensed physicians and several other licensed health professionals working for it and treating patients for it.  As such, it is a separate individual under Florida law.

11.    As shown by the Florida Secretary of State's website, "JC Medical Center" was a registered fictitious business name owned by and used by the corporation Gutteridge JeanCharles, M.D., P.A., up until 2021, when it expired.  It was never owned by or used by Dr. Jean-Charles individually.

12.    Instead, as of 2021, the registered fictitious business name "JC Medical, Inc." (or JCMI) was the official fictitious business name owned by and registered to Gutteridge JeanCharles, M.D., P.A.  It was never owned by or used by Dr. Jean-Charles individually.

13.    Dr. Jean-Charles also has a charitable foundation set up to assist international medical graduates and to provide charity medical services.

14.    In 2013, Dr. Jean Charles founded JC Medical Foundation.  It is:

> A national and international nonprofit organization. . . .  Its mission is to assist people in rural areas, provide support to individuals that do not have access to medical care or are unable to afford necessary healthcare services due to financial issues. JCMF has clinical and education awareness centers worldwide allowing JCMF members and volunteers to provide awareness of crucial medical conditions.

(See, https://www.jcmi.us/jcmfi, accessed Mar. 30, 2024.)

-4-

15.     On August 26, 2016, JC Medical Foundation, Inc. ("JCFMI"), was registered as a Florida not-for-profit corporation with the Florida Secretary of State, and has existed ever since then.

16.     Gutteridge JeanCharles, M.D., P.A., d/b/a JC Medical, Inc., offers services in internal medicine to the Central Florida area.  JC Medical, Inc., also has a team of its employees (physicians, nurses and medical assistants) who provide voluntary medical services to the Orlando Rescue Mission and other community programs in the Orlando area.

17.     JC Medical Foundation, Inc., through JCMI, also provides training and assistance, including short external clinical rotations (also referred to as "observerships" and "externships"), to medical graduates (American and foreign) seeking to become accepted into residency training programs in the United States.

> JCMI has trained and assisted many AMGs [American medical graduates] and IMGs over the past decade in obtaining positions in their speciality of interest. These residents and fellows share JCMI's beliefs and ideals of giving forward, which is why they help JCMI externs to provide them with a better understanding of the U.S. health system.

(See, https://www.jcmi.us/coming-soon-01-1, accessed Mar. 30, 2024.)

18.     Unlike a regular medical internship, a medical observership or externship is much shorter and is usually unpaid.

> Externs also do not typically get paid. Some externships, however, such as those in healthcare, may offer payment. While an internship can last several months or even a year, externships usually last for much shorter periods--often a few days or weeks.

(See, https://www.bestcolleges.com/blog/externship-vs-internship/, accessed Mar. 30, 2024)  Medical school graduates often accept externships in order to obtain actual, hands

on medical experience while trying to obtain a medical residency.

19.     JC Medical, Inc., in conjunction with JC Medical Foundation, Inc., offers external clinical rotations (sometimes called "oberserverships" or "externships") to international medical graduates through the American Medical Association (AMA). (See, https://www.ama-assn.org/education/-international-medical-education/observership-pro-gram-listings-international-medical/, accessed Mar. 30, 2024.)  The AMA has listed and approved the training offered by JCMI and JCMFI, long prior to 2022.

20.     Plaintiff was very familiar with unpaid externships, because he previously had quite a few.

a.     In the resume that he presented to JCMI in connection with his application, Plaintiff indicated that he had performed an unpaid externship in internal medicine at Jersey Shore University Medical Center in Neptune, New Jersey, during July 2016, working  for a Dr. Odejobi, working an average of 60 hours per week.

b.     In the same resume, Plaintiff indicated that he had performed another unpaid externship in internal medicine at Jersey Shore University Medical Center in August 2016, working for a Dr. Chinnici, working an average of 40 hours per week.

c.     In the same resume, Plaintiff indicated that he had performed an unpaid externship in neurological surgery at the Brain and Spinal Surgery Center, Troy, Michigan, in July 2017, working for a Dr. Zamorano, working an average of 40 hours per week.

d.     In the same resume, Plaintiff indicated that he had performed an unpaid externship in general surgery at the St. James Franciscan Hospital, Chicago Heights, Illinois, working for a Dr. Vera, from July 2017 through August 2017, working an average of 45 hours per week.

21.    JC Medical Foundation's website is replete with numerous testimonials from IMGs similar to the Plaintiff in this case (including one or more other physicians from Egypt), who participated in its programs in Orlando, Florida, and gone on to succeed in highly lucrative medical specialties. (See, https://www.jcmi.-us/testimonials, accessed Mar. 30, 2024.)

22.    In fact, JC Medical Foundation, Inc., is a necessary party to this litigation, yet Plaintiff has failed to name it as a party.

23.    JCMI is the organization that advertised the position for which the Plaintiff applied, not Dr. Jean-Charles, individually.  Plaintiff used the application form on the JCMI website to apply for the position about which he complains in the present lawsuit.

24.    During 2022, JCMI and JCMFI posted on Indeed.com listing for both unpaid short clinical internships (or "observerships") and also some paid clinical positions. However, if the position was a paid position, Indeed.com asked a series of "screening requirement" questions to the applicant.

25.    One of these screening questions was "Are you authorized to work in the following country: United States?" In order to get past the screening, Plaintiff would have had to have falsely answered "Yes" when applying.

26.    It is crucial to note that the Plaintiff had been in a general surgery residency program, which is a highly competitive, highly sought after medical specialty. He had been terminated from that program prior to completing his first year of training in 2019.

27.    Plaintiff advised JCMI/JCMFI that he was now attempting to obtain entry into a medical residency program in internal medicine, a less competitive medical specialty. He was seeking internal medicine experience at JCMI/JCMFI to assist him in getting into an internal medicine residency program.

28.     In his initial application to JCMI/JCMFI on March 24, 2022, Plaintiff admitted that his J-1 visa had previously expired, but falsely claimed that he now had a green card.

29.     Plaintiff did not have a visa or green card, is believed to have been in the United States illegally, could not have legally worked in the United States, and did not qualify for the position with JCMI for which he applied.

30.     Based on Plaintiff's application, Dr. Jean-Charles decided to Interview him. Plaintiff came to Orlando to JCMI for the purpose of being interviewed in April 2022.  While Plaintiff was at the JCMI office interviewing on or about April 19, 2022, Plaintiff falsely informed Dr. Jean-Charles that he was a green card holder and falsely stated that he was able to legally work in the United States. He was asked to complete all documents that would be needed to allow him to begin an internship at JCMI.  This was normally done through an online software platform JCMI used for this purpose, called "Gusto."  Plaintiff was given access to a computer at JCMI and requested to complete the information required by Gusto.

31.     The onboarding process included requesting the Plaintiff to provide documents showing that he was in the U.S. legally and had authorization to work.  He was required to produce identification documents such as a passport and driver's license and providing a visa or green card showing that he had authorization to work in the United States.  He was also required to assist in completing a Form I-9.[4]  Plaintiff left without providing such.

32.     Plaintiff refused to ever provide any information or documents that could be

---

[4]     Form I-9 (officially the "Employment Eligibility Verification"), is a United States Citizenship and Immigration Services (CIS) form mandated by the Immigration Reform and Control Act of 1986.  It is used to verify the identity of persons legally residing in the United States and to verify that they have legal authorization to work in the United States.

used to confirm he was in the United States legally and that he was authorized to work. He failed to provide a social security number, passport, drivers license, visa, green card, work authorization, or anything similar.

33.     On April 19, 2022, Defendant Dr. Jean-Charles received the following e-mail:

> From:  Gusto
> Sent:  Monday, April 18, 2022 8:07 AM
> To:  Gutteridge Jean Charles;
> Subject: [Action Required] Remind [name deleted] to complete Gusto self-onboarding
> [Name deleted] needs to finish self-onboarding.
> Yay! Today is [name deleted] first day at GUTTERIDGE JEANCHARLES, MD, P.A.
> Please remind [name deleted] to complete Gusto onboarding when they arrive today. To be federally compliant, [name deleted] must also complete the Form I 9 employment eligibility document.

34.     Before Plaintiff began any activities at JCMI and before he came to JCMI in Orlando, he was requested to complete a Form I-9 and provide his social security number, identification documents and authorization to work to JCMI's payroll service.  Plaintiff failed to do this.

35.     Once Dr. Jean-Charles found out that Plaintiff was unable to provide proper work documentation and likely not legally authorized to work in the United States, Dr. Jean-Charles terminated the offer to Plaintiff.  At no point did Dr. Jean-Charles ever offer to overlook plaintiff's immigration status.

36.     Paragraph 46 of the Complaint states that Dr. Jean-Charles told Plaintiff that all he was able to do was allow Plaintiff to "'volunteer' for three (sic) months."  In Paragraph 51 of the Complaint, Plaintiff quotes a statement believed to be from Dr. Jean-Charles to Plaintiff:

> This is an official communication to confirm your request to be

granted the status of "volunteer" at the JC Medical Center for a period of three months in which you will be receiving training and opportunity to gain valuable US (sic) clinical experience as an IMG.  This training period will be followed by a salaried position starting July 2022, <u>if all goes according to plan and all other requirements are met.</u>  (Emphasis added.)

37.    Dr. Jean-Charles being an IMG himself, agreed to take Plaintiff on as a volunteer at JC Medical Center.  While working as a volunteer in an unpaid observership or externship with Defendants and JCMFI, Plaintiff was to obtain his green card or other work authorization within three (3) months.  Plaintiff kept promising to Dr. Jean-Charles that he would obtain his legal paperwork soon, but he never provided them.

38.    Paragraphs 1-109 of the Complaint clearly show that Plaintiff knew he was in the United States illegally and was not legally allowed to work for the Defendants or anyone else.  These Paragraphs are incorporated into each Count of the Complaint, thus rendering each Count a nullity.

## <u>GROUNDS TO STRIKE THE COMPLAINT</u>

### 1.  <u>Complaint Attempts to Enforce Illegal Business Arrangement;  Overall Illegality of Any Contract or Agreement to Employ Plaintiff or to Pay Plaintiff Wages</u>

39.    The "big picture" that Plaintiff appears to gloss over in the general allegations (Paras. 1 through 109) of this Complaint is that Plaintiff attempts to manufacture and plead and employer–employee situation and various jobs, contracts and agreements for employment, that are prohibited by law and would be illegal for the Court to enforce. Plaintiff seeks to plead a contract for employment or other entitlement to "unpaid wages" when it was, in fact, illegal for Plaintiff to be working in the United States, and Plaintiff knew this.

40.    When Plaintiff submitted his application to Defendants on Indeed.com, he

knew it was illegal for him to work in the United States. It is also believed that he was residing in the country illegally at the time on a J-1 visa that had expired on December 31, 2019.

41.     Paragraph 23 states that Plaintiff was "without work authorization" around the time when he applied for a position with the Defendants.  Paragraph 22 indicates that Plaintiff was "waiting for his legal paperwork"  (apparently referring to his "immigration application" (Para. 20) for a "visa waiver" (Para. 19) or a "green card" (Para. 21). Paragraph 27.c. states that Plaintiff admitted on March 26, 2022, that he did not have a green card or work authorization.

42.     In Paragraph 44, for example, Plaintiff alleges "Plaintiff was unable to access Gusto [on April 19, 2022] due to a lack of work authorization paperwork. . . . "

43.     Even though the failure to plead specific dates for any material events makes the complaint extremely confusing, the foregoing paragraphs make it clear that the Plaintiff did not have a visa or green card at the time he applied for a position with the defendants.

44.     The most important issue regarding the Complaint, which is fatal to each and every cause of action pleaded, is that it seeks to have the Court enforce what is clearly shown in the Complaint to be an illegal business arrangement, with illegal contracts and agreements.

45.     Although the allegations made by the Plaintiff are for the most part false, nevertheless, Plaintiff seeks this Court's assistance in enforcing contracts and agreements for work for pay in violation of federal laws which were being violated by the Plaintiff. Plaintiff is believed to have been in the United States illegally at all times relevant to this Complaint.  Plaintiff did not have the required visa, green card or any work authorization that would have allowed him to be legally employed.

46.    This legal defect, which makes each Count in the Complaint defective, is repeated by the incorporation of Paragraphs 1-109 into each Count.

## 2. Failure to Comply With Rules of Court

47.    Plaintiff has filed his Complaint using a pseudonym when there is no statute, rule or order authorizing it.  This is designed to use such anonymity as a sword to defame and tarnish the reputations of the Defendants while also using it a shield to hide behind so that there are no consequences to the Plaintiff.

48.    This also unfairly ties the hands of the Defendants in that Defendants may be unable to subpoena records from other institutions and individuals or to depose other individuals and organizations with knowledge about the Plaintiff and his allegations in order to defend themselves.

49.    This violates Rule 10(a), Federal Rules of Civil Procedure and Local Rule 1.11.  Since this affects the entire Complaint, the entire Complaint should be stricken.

## 3. Failing to Accurately Plead the Dates of Events and Using Them out of Chronological Order Violates Rule 9(f) and Requires Striking

50.    As indicated previously, the Plaintiff has alleged a number of different events, some occurring years apart, without specifying the times, dates or places of their occurrence. Most problematic is the failure to date different events and the use of those events out of chronological order so that the facts in the Complaint distort the truth.

51.    For example, Paragraph 17 merely states that the Plaintiff came to the United States without giving any date.  Paragraph 18 states that the Plaintiff met a woman and got married, no date.  Paragraph 19 states that Plaintiff applied for a visa waiver based on his marriage so that he could remain lawfully in the United States, again no date.  Paragraph 20 provides an excuse for why plaintiff could not obtain a "visa waiver" because of his

"immigration applications" and blames it on the pandemic, without providing any dates or details.

52.     Dates are purposely omitted and events are presented out of chronological order to make it appear as though Plaintiff was in the United States legally and authorized to work at the time he applied for a position with the Defendants in March 2022.  This is believed to be totally false.  However, the absence of the dates is fatal to the pleading.

53.     Such pleading violates Rule 9(f), which states that times (including dates) are "material allegations" which must be pleaded.

54.     This affects every Count in the Complaint and requires it to be stricken by the Court.

### 4. Impermissible Conflation of Two Different Parties

55.     In Paragraph 39 of the Complaint, the Plaintiff makes the naked legal conclusion:  "JC Medical Center[5] is the alter-ego [sic] of Dr. Jean-Charles."  The same allegation is repeated, redundantly, in Paragraphs 114, 124, 136, and 144.  However, there are no material facts alleged to support any such an assertion.

56.     This is an impermissible attempt by the Plaintiff to confuse the two different Defendants in the Complaint and get away without having to specifically plead the allegedly wrongful acts of each one.

57.     Since Paragraph 39 is incorporated into each separate Count of the Complaint this causes each Count to suffer from the same defect.  Accordingly, the entire

---

[5]     JC Medical Center was the registered fictitious business name of Gutteridge JeanCharles, M.D., P.A., a Florida professional service corporation.  However, that fictitious business name was allowed to expire in 2021.  Since that time, Gutteridge JeanCharles, M.D., P.A., has used the registered fictitious business name JC Medical Inc., which the Florida Secretary of State shows is owned by it.  Plaintiff attempts to conflate and confuse the actions of the corporation with the actions of the individual by doing this.

Complaint should be stricken.

### 5. Redundant Counts Should Be Stricken

58.     Count II of the Complaint is redundant to Count I and Count IV of the Complaint is redundant to Count III.  Each should be stricken pursuant to Rule 12(f), Federal Rules of Civil Procedure.

59.     Count I of the Complaint I attempts to plead a cause of action for "human trafficking" against "All Defendants."  Count II of the Complaint pleads the identical cause of action against "JC Medical Center,"[6] one (1) of the two (2) Defendants previously named in Count I.  Count III of the Complaint attempts to plead a different cause of action for "human trafficking" against "All Defendants."  Count IV of the Complaint pleads the identical cause of action against "JC Medical Center," one (1) of the two (2) Defendants previously named in Count III.

60.     This redundant pleading violates Rule 12(f), Federal Rules of Civil Procedure.

### 6. Failure to Attach Documents Central to the Causes of Action Pleaded

61.     In Paragraph 25, Plaintiff refers to an advertisement for employment for a paid position that he allegedly responded to. Yet Plaintiff did not attach a copy of that key advertisement that is central to the Complaint.

62.     In paragraph 28, Plaintiff discusses an e-mail that was allegedly sent to him by the Defendants March 26, 2022 providing the specific terms of a "job offer" (also later referred to as an "employment position").  In Paragraph 31, Plaintiff refers to an e-mail dated March 29, 2022, which the Defendants allegedly sent to him.  Plaintiff later seeks to

---

[6]   "JC Medical Center" is incorrectly stated by the Plaintiff in Paragraph 16 of the Complaint to be the fictitious business name of Gutteridge JeanCharles, M.D., P.A., a Defendant in this action.

enforce these two (2) e-mails as a written contract.  Yet Plaintiff has failed to attach a copy of either e-mails, both central to his Complaint.

63.     Paragraphs 83-84 allege "a 3-year employment contract" that the Defendants allegedly offered Plaintiff, a document that is central to his causes of action.  Yet it is not attached as an exhibit.

64.     Plaintiff has attached no writings of any kind that would support the existence of any contract or agreement, enforceable or not.  Fairness dictates their attachment.

## 7.  Plaintiff's Attempt to Commit Illegal Acts Constitute "Unclean Hands" on the Part of Plaintiff, Barring Enforcement of Any Equitable Causes of Action

65.     The illegal acts as spelled out in the Complaint, as detailed further in paragraphs 1 through 38, above, of this Motion, define "unclean hands" and are incorporated by Plaintiff into each Count of the Complaint.  This is a bar to any cause of action in equity such as those stated in Counts VIII through X, making them unenforceable and a legal nullity.

## 8.  Impermissible Incorpration of All General Paragraphs Into All Counts Constitutes "Shotgun Pleadings" Which the Court Should Strike

66.     Each Count of the Complaint incorporates Paragraphs 1 through 109 of the Complaint into those Counts.  Many of the Paragraphs incorporated contradict each other. This type of pleading is improper and violates Rule 10(b), Federal Rules of Civil Procedure.

67.     Paragraphs 1 through 109, also show that the Plaintiff had no valid visa and no valid green card and knew it would be illegal for him to apply for or accept a job in the United States.  On information and belief, it appears that these paragraphs also show that the Plaintiff was knowingly, willfully, and voluntarily staying in the United States without legal authority at all times relevant in the Complaint, making each Count void and unenforceable.

68.    Paragraphs 1 through 109, incorporated into each Count, also attempt to plead a written contract or contracts that Plaintiff seeks to enforce.  This is specifically pleaded in Paragraphs 25 (Plaintiff refers to an advertisement for employment for a paid position that he allegedly responded to), Paragraphs 28 and 31 (Plaintiff discusses an e-mails that were allegedly sent to him by the Defendants on March 26 and 29, 2022 providing the specific terms of a "job offer" (also later referred to as an "employment position") and Paragraphs 83-84 (alleging "a 3-year employment contract" that the Defendants allegedly offered Plaintiff).

69.    These allegations of a written contract are incorporated into Counts VIII, IX, and X, which are causes of action pleaded in equity, therefore contradicting them and making them nullities.

**9.  Unnecessarily Derogatory and Inflammatory Statements Are Made Throughout the Complaint; Such Impertinent and Scandalous Language Should Be Stricken**

70.    The Complaint uses a number of inflammatory and derogatory statements accusing the Defendants, especially Dr. Jean-Charles, of horrendous acts.  These prejudicial allegations are scandalous, impertinent, and immaterial, and require striking.

71.    For example, Paragraph 3 contains prejudicial wording: "this illicit operation while his victims remain desperate, scared, and poverty-stricken."  Paragraph 11 states that the Plaintiff was ". . . exploited by Defendants."  Paragraph 66 states:  "He [the Plaintiff] was ominously scolded [by Dr. Jean-Charles] instead of taught how to correct the mistake."  Paragraph 69 sates that Dr. Jean-Charles:  "uses humiliation in his teaching approach, calling out and embarrassing his employees and interns. . . . "  These are just a few of the examples which the Court is able to read and discern on its own.

72.    Such pleading makes the offending paragraphs, incorporated into each

Count, a violation of Rule 12(f), and requires striking.

**10.  Statements of Naked Legal Conclusions Without Any Material Supporting Facts**

73.     The Complaint makes a number of statements that are nothing more than naked legal conclusions, without alleging any material facts that would support such conclusions.

74.     For example, in Paragraph 39, Plaintiff states:  "JC Medical Center[7] is the alter-ego [sic] of Dr. Jean-Charles."  This is false in a number of different ways and is an attempt to "Pierce the corporate veil" without sufficiently pleading the facts and elements required in order to do so.

75.     Paragraph 3, refers to Dr. Jean-Charles's medical practice and foundation as an "illicit operation" without any facts to support that conclusion.

**11.  Internal Inconsistencies in the Pleading Makes Each Count in the Complaint Internally Inconsistent and a Nullity**

76.     This is a byproduct of the Plaintiff's "shotgun pleading" which incorporates Paragraphs 1-109 into each Count of the Complaint.

77.     In addition to the deficiencies already noted above, there are a number of contradictory statements and allegations made by the Plaintiff in the Complaint which demonstrate that little effort has been made to investigate and verify any facts nor has attention been paid to accurately pleading the facts.

78.     Paragraph 25 of the Complaint states that the job advertisement relied upon

---

[7]     "JC Medical Center" was the registered fictitious business name used by Gutteridge Jean-Charles, M.D., P.A., a Florida professional service corporation and the medical practice in which Dr. Jean-Charles practices, until it expired on December 31, 2021.  However, Defendant Gutteridge Jean-Charles, M.D., P.A., is a corporate entity separate and apart from Defendant Dr. Jean-Charles and the law requires it to be treated as such.

by Plaintiff "offered full-time employment with a salary of $500 per month." As pointed out previously, not only has Plaintiff failed to attach a copy of any document showing this, but the statement itself is absurd. Full-time employment at a salary of $500 per month would be paying at the rate of $2.88 per hour, illegally violating both Florida and federal minimum wage laws.

79.    Paragraph 25 is contradicted by Paragraphs 27.b., 34, 44 and 49 of the Complaint.

80.    Paragraph 34 is contradicted by Paragraphs 23–25, 27.b., 44 and 49.

81.    Paragraph 37, falsely alleges: "Dr. Jean-Charles was the sole, licensed doctor at JC Medical Center."[8] However, paragraph 58 then refers to another "two providers and three clinical assistants Monday – Friday," and another "three providers and two clinical assistants" on Saturday. Paragraph 72 also states that there was "another doctor from Haiti" working there and various international medical graduates.

## MEMORANDUM OF LAW

### Names of Parties Are Required

Rule 10, Federal Rules of Civil Procedure, states:

**Form of Pleadings**

**(a) CAPTION;  NAMES OF PARTIES.** Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties;  the title of other pleadings, after naming the first party on each side, may refer generally to other parties.

---

[8]    In fact, Defendant Gutteridge JeanCharles, M.D., P.A. d/b/a JC Medical, Inc., at that time in 2020, in addition to himself, employed one (1) other full-time Florida licensed physician, two (2) other part-time Florida licensed physicians, three (3) Florida licensed advanced practice registered nurses (APRNs), and one (1) Florida licensed physician assistant (PA) who saw and treated patients.

Local Rule 1.11 contains additional language clarifying that requirement and specifically addressing the filing of a Complaint using a pseudonym or requesting the sealing of the name of a party.  Plaintiff has violated both Rules seeking to use his Complaint as a sword to inflict damage on the Defendants while also attempting to use it as a shield to hide himself at the same time.

### Specific Dates Are Required

Rule 9(f), Federal Rules of Civil Procedure, states:  **"TIME AND PLACE.**  An allegation of time or place is material when testing the sufficiency of a pleading."  (Emphasis in original.)  Plaintiff has violated this Rule by confusingly making numerous different allegations of incidents that allegedly occurred (or failed to occur) without pleading the times (specifically the dates) and places of such matters.

Allegations of date, time, and place are required, when alternate means (such as an attached contract or letter) are not provided.  The purpose of this heightened pleading requirement is to give the defendant fair notice of the claims brought against it, to protect the defendant from harm to its reputation, and to prevent plaintiffs from filing baseless claims and then attempting to discover unknown wrongs.  Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1512 (11th Cir. 1988); see also, Order Granting Motion to Dismiss, Zarrella v. Pac. Life Ins. Co., 755 F. Supp. 2d 1231, 1236 (S.D. Fla., Mar. 29, 2011); Colonial Penn Ins. Co. v. Value Rent-A-Car, Inc., 814 F. Supp. 1084 (S.D. Fla. 1992).

The failure to include dates, material allegations, has made the causes of action in the complaint difficult, if not impossible, to make out or respond to, and leads to a distorted understanding of the actual facts of the case.

### Scandalous, Impertinent, Immaterial and Redundant Matter Must Be Stricken

Rule 12(f) of the Federal Rules of Civil Procedure states:

**Motion to Strike**.  The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1)  on its own;  or

(2)  on motion made by a party either before responding to the pleading. . . .

"Scandalous matter" is defined as that which "improperly casts a derogatory light on someone, usually a party to the action." Order on Motion to Strike, <u>Morris v. Propel People</u>, No. 6:20-cv-1053-HMH-KFM, 2020 U.S. Dist. LEXIS 261048, at *2 (D. S. C., Jun. 17, 2020) (quoting 61A Am. Jur. 2d § 471).   "Impertinent matter" is defined as "any allegation not responsive or relevant to the issues involved in the action and which could not be put in issue or be given in evidence between the parties."  <u>Morris</u>, <u>supra</u>.  "An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action."  Order on Motion to Strike, <u>Sprengle v. Smith Maritime, Inc.</u>, 2021 U.S. Dist. LEXIS 94974 (M.D. Fla. May 19, 2021), (<u>quoting</u>, <u>State Farm Mut. Auto. Ins. v. Advantacare of Fla., LLC</u>, No. 6:19-cv-1837-CEM-LRH, 2020 U.S. Dist. LEXIS 92302, 2020 WL 2630226, at *11 (M.D. Fla. May 22, 2020) (<u>unpublished</u> op.) (citation omitted).

The Complaint is replete with numerous allegations stating nothing more than "scandalous," "impertinent" and "immaterial" matters.  These are so numerous and so integrated into each Count that the entire Complaint should be stricken by the Court.

### <u>The Illegality of the Alleged Employment Arrangement Bars Enforcement</u>

The Immigration Reform and Control Act of 1986 (IRCA), Pub. L. No. 99-603, 100 Stat. 3359 (1986), specifically, 8 U.S.C. § 1324a, makes it unlawful to hire or to continue to employ anyone such as the Plaintiff, who did not have proper authorization to work in

the United States.  The Complaint shows that Plaintiff knew this.  IRCA also prohibits employers from continuing to employ an individual knowing that he or she is unauthorized for employment.

An illegal contract may not be enforced by either party.  In re Securities Groups, 116 B.R. 839, 840 (M.D. Fla. 1990).  This is an established principle of American jurisprudence. In McMullen v. Hoffman, 174 U.S. 639 (1899), the U.S. Supreme Court stated:

> No court will lend its assistance in any way towards carrying out the terms of an illegal contract.  In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, the courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract.

McMullen v. Hoffman, 174 U.S. 639, 644 (1899).  This principle has been echoed through the decades.

> [To] permit a recovery . . . is in substance to enforce an illegal contract, and one which is illegal because it is against public policy to permit it to stand.  The court refuses to enforce such a contract and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, but only on account of the public interest.

Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 77 (1982) (quoting, McMullen v. Hoffman, 174 U.S. at 669).  No court should lend its assistance in any way towards carrying out the terms of an illegal contract or business arrangement of any kind.

In the present case, the illegal arrangement is incorporated into each Count in the Complaint, requiring dismissal of the Complaint.

### Key Documents Central to the Causes of Action, Should be Attached

Certain documents that are central to the causes of action pleaded, especially the "three year contract" and the documents specified in paragraphs 61-63 above, shoulkd be

attached out of fairness to the Defendants.

A document should be attached when, in fairness to the defendant, the plaintiff files a complaint alleging a cause of action based on it.  See, Sprengle v. Smith Mar. Inc., 660 F. Supp. 3d 1337, 1351 (M.D. Fla. 2023) (citing, Adamson v. De Poorter, No. 06-15941, 2007 U.S. App. LEXIS 23577, at *7 (11th Cir. Oct. 4, 2007)).  Accord, Harvest Moon Distribs. v. S. Owners Ins. Co., 493 F. Supp. 3d 1179, 1181 (M.D. Fla. 2020) (quoting, Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

### The Complaint Should Be Stricken for Improper "Shotgun Pleading" in Violation of Rules 8 and 10(b)

Rule 8(a)(2), Federal Rules of Civil Procedure, states that pleadings "must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  In addition, Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" if doing so would promote clarity."

To satisfy the pleading requirements of Rule 8, Federal Rule of Civil Procedure, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007);  Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005).

Complaints that violate the Federal Rule of Civil Procedure 8(a)(2) or 10(b) "are often disparagingly referred to as 'shotgun pleadings.'"  Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015).  The 11th circuit court identified four types of shotgun pleadings:

Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

Id., at. 1321-1323.

### **Plaintiff Improperly Attempts to Pierce the Corporate Veil**

Plaintiff has improperly attempted to "pierce the corporate veil" between Dr. Jean Charles and his medical corporation, Gutteridge JeanCharles, M.D., P.A. (d/b/a JC Medical, Inc.), by the naked assertion that they are "alter-ego[s]" [sic].

However, Plaintiff has failed to allege any ultimate facts that would allow the "piercing of the corporate veil" between them. It is black letter law in Florida that to disregard the corporate fiction and hold the corporation's owners liable or to "pierce the corporate veil," the plaintiff must plead certain elements that Plaintiff has failed to plead. Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)).

**Failure to Plead Sufficient Ultimate Facts**

Counts I, II, III, IV, V, VI, and VII of the Complaint do not provide suffcient statements of fact to support the claims made.  They all fail to state a claim upon which relief can be granted.  A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For purposes of Rule 8(a)(2), a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 556).  For example, Plaintiff alleges in Paragraph 116 that the Defendants "threatened abuse of law or legal process" to obtain Plaintiff's labor or services in violation fo 18 U.S.C. Sect. 1589(a)(3).  However, nowhere in the complaint has Plaintiff outright state exactly what it was that was allegedly "threatened."  No law or process is alleged.

## CLAIM FOR ATTORNEY'S FEES AND COSTS

Defendants are also entitled to their attorney's fees and costs pursuant to 18 U.S.C. Sect 1595(a), 29 U.S.C., Sect. 216(b) and Section 448.08, Florida Statutes.

## REQUEST FOR RELIEF

For the foregoing reasons, Defendants respectfully request the Court to strike the Plaintiff's Complaint or, alternatively, dismiss it and award Defendants their attorney's fees and costs pursuant to 18 U.S.C. Sect 1595(a), 29 U.S.C., Sect. 216(b) and Section 448.08, Florida Statutes, and any other authorities cited by Plaintiff.

## LOCAL RULE 3.01(g) CERTIFICATION

I certify that I have conferred with opposing counsel Lisa Haba, Esquire, regarding this Motion.  I send opposing counsel an e-mail on April 1, 2024, containing the details of

the issues set forth in this Motion and then counsel conferred by telephone regarding these issues on April 2, 2024.  Counsel for Plaintiff did not agree with the position of the Defendants and the Parties could not agree on the resolution of the issues in this Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on April 2, 2024, I caused the foregoing to be filed with the Clerk of Court using CM/ECF electronic filing system.

/s/  George F. Indest III

_____
**GEORGE F. INDEST III, ESQUIRE**
**LEAD COUNSEL/TRIAL COUNSEL/**
**COUNSEL TO BE NOTICED**
Certified by The Florida Bar in Health Law
Florida Bar No.:  382426
Primary E-mail:  GIndest@TheHealthLawFirm.com
Secondary E-mail: Courtfilings@TheHealthLawFirm.com
**MICHAEL L. SMITH, ESQUIRE**
**TRIAL COUNSEL/COUNSEL TO BE NOTICED**
Certified by The Florida Bar in Health Law
Florida Bar No.:  0144487
Primary E-mail:  MSmith@TheHealthLawFirm.com
**AMANDA I. FORBES, ESQUIRE**
**TRIAL COUNSEL/COUNSEL TO BE NOTICED**
Florida Bar No.:  1015844
Primary E-mail:  AForbes@TheHealthLawFirm.com
**CASTILLANA F. DUVERNAY, ESQUIRE**
**TRIAL COUNSEL/COUNSEL TO BE NOTICED**
Florida Bar No.:  1049635
Primary E-mail:  CDuvernay@TheHealthLawFirm.com
**THE HEALTH LAW FIRM, P.A.**
1101 Douglas Avenue, Ste. 1000
Altamonte Springs, Florida  32714
Telephone:  (407) 331-6620
Telefax:  (407) 331-3030
**COUNSEL FOR DEFENDANTS,**
**GUTTERIDGE JEANCHARLES, M.D., P.A., and**
**GUTTERIDGE JEAN-CHARLES, M.D.**

GFI/CFD   S:\3400-3499\3480\001-MD Fla\410-Pleadings-Drafts & Finals\Motion to Strike & Dismiss-Final.wpd