## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JOHN DOE, a pseudonym,

        Plaintiff,

    -vs-

GUTTERIDGE JEANCHARLES,
M.D., P.A., a Florida Corporation,
and GUTTERIDGE JEAN-
CHARLES, M.D., an individual,

        Defendants.

CASE NO.: 6:24-cv-00034-RMN

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
## MOTION TO STRIKE, OR ALTERNATIVELY,
## DISMISS PLAINTIFF'S COMPLAINT

## STATEMENT OF FACTS

Plaintiff is a physician from Egypt, who entered the U.S. on a J-1 Exchange Visitor Visa to seek advanced training in a U.S. medical residency program. (Compl. ¶ 17). For a period of time, Plaintiff did not have work authorization to work in the United States. (Id. ¶ 23). Without work authorization, Plaintiff could not "match" a residency program or legally be employed. (Compl. ¶ 23). During this time, Plaintiff had vulnerabilities due to his immigration status, his financial status, and his fear of not being about to "match" a residency program to pursue his dream of being a doctor.

Plaintiff applied for a job at Gutteridge JeanCharles M.D., P.A. ("Medical Practice") with the intent to obtain employment. (Compl. ¶¶ 25-27). Dr. Jean-Charles offered Plaintiff employment as a "Clinical Assistant" and represented that he would "shadow, learn, train, and be taught about the practice of medicine" in exchange for compensation. (Id. ¶ 28.a.). Dr. Jean-Charles deceitfully led Plaintiff to believe that the Medical Practice had helped many similarly situated doctors get into residency programs, he would pay Plaintiff a stipend as compensation, he would reimburse moving expenses, he would write a letter to USCIS to help speed up the immigration process, and he knew that Plaintiff could not lawfully work yet but was willing to overlook that and hire him anyways. (Id. ¶ 27). He offered Plaintiff a solution to all of his problems.

It was not until Plaintiff incurred the tremendous cost of relocating himself and his family across the United States that Defendants changed the offer and refused to pay Plaintiff. (Id. ¶ 27, 28, 33-34, 40, 45-55). Defendants maintained Plaintiff's

employment and labor at Medical Practice through fraudulent promises that Defendants would pay Plaintiff in the future for the hours worked (id. ¶¶ 27, 28, 34, 77), he would give him a salary and future earning potential (id. ¶¶ 83-85), he would help him with immigration (id. ¶ 77), and he would help him with getting into a residency program (id. ¶¶ 27, 35, 77).

For no pay (except one $200 gift card), Dr. Jean-Charles and Medical Practice had Plaintiff working as a practicing physician, seeing over half the daily intake of patients without supervision.   (Id. ¶¶ 56, 73-75, 90).   All of these patients were fraudulently being billed at the rate for Dr. Jean-Charles. (Doc. 13-1 ¶¶ 7-9).   Dr. Jean-Charles also required Plaintiff to add Dr. Jean-Charles' electronic signature to orders for labs and referrals without oversight or supervision.   (Compl. ¶ 81).   Dr. Jean-Charles did not consult with Plaintiff on patient care and only reviewed files after treatment was rendered, if at all.  (Id. ¶¶ 73, 82).

Dr. Jean-Charles finally terminated Plaintiff when he realized Plaintiff's family member knew that he was exploiting Plaintiff and confronted him (id. ¶¶ 103-108). Dr. Jean-Charles attempted to buy Plaintiff's silence by handing him $500 cash and a $450 gift card (id. ¶ 105) and attempted to "rewrite" the facts by telling Plaintiff he did not know that Plaintiff did not have work authorization when he hired him at the time of his termination. (Affidavit ¶ 17).

## ARGUMENT

Defendant has raised a Motion to Strike or, Alternatively, Dismiss Plaintiff's Complaint.  While it's not clear where the Motion to Strike ends and the Motion to

Dismiss begins, it appears that the majority of the arguments seek striking the entire complaint as the remedy.  All of the stated grounds for the motion are housed under the title "Grounds to Strike the Complaint." (Doc. 28, pg. 10).  After that section is a section titled "Memorandum of Law" which discusses the proposed legal basis to support the "Grounds to Strike the Complaint." (Id., pg. 18).  Under each sub-section, the requested remedy varies, seeking either to strike or dismiss the complaint in its entirety.  In some sub-sections, the remedy is not identified either way and the reader is left wondering what the defense is seeking.  Plaintiff responds accordingly.

## I.   LEGAL STANDARD

### A. Motion to Strike

The Middle District has long disfavored motions to strike.  This Court has addressed this as follows:

> Rule 12(f) of the Federal Rules of Civil Procedure provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, motions to strike based on immateriality, insufficiency, or irrelevance are **often considered "time wasters."** *Somerset Pharms., Inc. v. Kimball*, 168 F.R.D. 69, 71 (M.D. Fla. 1996). To strike a pleading, the matter sought to be omitted must have **"no possible relationship to the controversy, may confuse the issues, or otherwise prejudice the party."** *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995) (citations omitted). Thus, **because a movant rarely meets this standard, motions to strike generally are disfavored by the court**. *United States ex rel. Chabot v. MLU Servs., Inc.*, 544 F. Supp. 2d 1326, 1330 (M.D. Fla. 2008).

*Digiart, LLC v. Casale*, No. 6:22-cv-494-WWB-DAB, 2022 U.S. Dist. LEXIS 236873, at *4 (M.D. Fla. Sep. 1, 2022) (emphasis added); *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1347 (M.D. Fla. 2002) ("A motion to strike is a

drastic remedy, which is disfavored by the courts and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."); *Lazier v. Sculley's Mgmt. LLC*, No. 8:14-cv-2773-T-33MAP, 2014 U.S. Dist. LEXIS 164074, at *2 (M.D. Fla. Nov. 24, 2014) (motions to strike are disfavored due to their drastic nature).

A motion to strike "is not intended to 'procure the dismissal of all or part of a complaint.'" *Hodge v. Orlando Utils. Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2009 U.S. Dist. LEXIS 110464, at *10-11 (M.D. Fla. Nov. 23, 2009) (citing *Rockholt v. United Van Lines*, 697 F. Supp. 383, 386 (D. Idaho 1988) and (5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (1969))). Rather, it's purpose is to eliminate specific lines or portions of the complaint "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Id.* at *10 (citing *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).

### A. Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Ancata v. Prison Health Svcs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985); *see also Jackam v. Hospital Corp. of America*

*Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1983). Pursuant to the federal rules, a claimant must only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal at this early stage is inappropriate where plaintiff's complaint states "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## II.  GROUND 1: COMPLAINT SHOULD NOT BE STRUCK FOR PLEADING ELEMENTS OF LABOR TRAFFICKING SCHEME

### A. Remedy Sought: Strike Complaint

Defendants argue in Ground to Strike #1 that the Complaint should be stricken in its entirety because (1) the Defendants dispute the alleged facts, and (2) Defendants believe Plaintiff seeks to enforce an illegal contract.  The Defendants do not seek to dismiss the complaint based on these grounds.

Because the sought remedy is to strike the complaint, the analysis is whether the allegations have *any* possible relation to the controversy *and* may cause prejudice to one of the parties.  *Thompson*, 211 F. Supp. 2d at 1347.

### B. Defendants Raise Factual Disputes

First, Defendants argue that they factually dispute Plaintiff's characterization of the "employer-employee" relationship that Plaintiff has alleged.[1]  But a motion to strike is not intended to ask a judge to "settle factual disputes" or "decide substantial, disputed issues of law" unless the moving party can show prejudice.  *Naples Screen Repair, Ltd. Liab. Co. v. Arrow Handyman "Ltd. Liab. Co.*, No. 2:20-cv-844-SPC-NPM,

---

[1] Defendants' failed to provide any affidavit, declaration, or evidence to support this statement.

2021 U.S. Dist. LEXIS 88317, at *7 (M.D. Fla. May 10, 2021). Defendants have not alleged any prejudice if this Court were not to settle factual disputes at the pleading stage. As such, the only facts for this Court's consideration are those pled in the Complaint.

### C. Plaintiff's Allegations Are Relevant to Controversy

Second, Defendants argue that Plaintiff was not allowed to legally work in the United States and therefore has no right to enforce a contract with Defendants. Defendants allege that this is fatal to "each Count in the Complaint" without limitation.

What Defendants ignore is that the first four counts involve labor trafficking, pursuant to 18 U.S.C. § 1595(a). Plaintiff's allegations about his immigration status and lack of work authorization establish the vulnerability that made Plaintiff susceptible to being lured to work at the Medical Practice "through fraud, misrepresentation, and coercion." (Compl. ¶¶ 115, 125, 137, 145). Plaintiff alleged that Defendants engaged in a scheme, plan, or pattern that preyed on his vulnerability and used his desire for learning and paid work to lure and entice Plaintiff to relocate and accept the position with Medical Practice. (Id. ¶¶ 27-36, 118, 128). This was based on promises of financial compensation, relocation reimbursement, assistance with immigration, and learning opportunities (Id.). Plaintiff alleged that he felt trapped and could not leave the position, as leaving would ensure he did not match a residency program for another year without the promised letter, and leaving would mean he would not receive the backpay that Dr. Jean-Charles kept dangling in front

of him to ensure compliance.  (Id. ¶ 98).  These allegations are necessary elements to plead the four counts of labor trafficking and certainly have a relevancy to the controversy.  *Thompson*, 211 F. Supp. 2d at 1347.  As such, the motion to strike on this basis must be denied.

## III.  GROUND 2: PLAINTIFF FILING UNDER A PSEUDONYM DOES NOT OFFER GROUNDS TO STRIKE THE COMPLAINT

### A. Remedy Sought: Strike Complaint

Defendants argue in Ground to Strike #2 that the Complaint should be stricken in its entirety because Plaintiff filed the Complaint under a pseudonym.  The Defendants do not seek to dismiss the complaint based on these grounds.

### B.  No Legal Basis to Strike Complaint Based on Pseudonymity

Defendants argue, without any legal authority, that Plaintiff filing the complaint under a pseudonym necessitates the "entire Complaint" to be stricken.  Although Fed. R. Civ. P. 10(a) requires the title of the complaint to name all the parties, courts have allowed litigation under a pseudonym when a party establishes "a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992); *Doe v. Neverson*, 820 Fed.Appx. 984, 986 (11th Cir. 2020); *Plaintiff B v. Francis,* 631 F.3d 1310, 1315 (11th Cir. 2011); *Stegall*, 653 F.2d at 186.  Whether a party's right to privacy outweighs the presumption of openness should be evaluated by reviewing the totality-of-the-circumstances.  *In re Chiquita Brands Int'l Inc.*, 965 F.3d 1238, 1247 n.5 (11th Cir. 2020); *Plaintiff B*, 631 F.3d at 1315.

Oddly, Defendants state that this "unfairly ties the hands of the Defendants in that Defendants may be unable to subpoena records from other institutions and individuals or to depose other individuals and organizations with knowledge about the Plaintiff and his allegations in order to defend themselves." (MTD, pg. 12).  This motion was filed on April 2, 2024.  On April 5, 2024, Defendants' counsel served Plaintiff's counsel with fifteen proposed subpoena duces tecums which all identified Plaintiff by name and sought service on many, if not all, of his former and current employers, amongst other third-parties. (See Ex. 1, Haba Affidavit).  Defendants' statement that they would be unfairly disadvantaged was clearly disingenuous since extensive knowledge of his identity and actions was made known three days after this filing.

Plaintiff filed a Motion seeking leave of this Court to proceed under a pseudonym. (Doc. 13).  This Court denied that motion. (Doc. 15).  Plaintiff appealed this decision to the Eleventh Circuit, inadvertently doing so before appealing to the District Court Judge.  Plaintiff is still engaged in the appellate process of this decision and will imminently being filing such a motion to address the next phase of review.  As such, until a final order is entered, Plaintiff is engaged in the process to seek leave to proceed under a pseudonym and a motion to strike the complaint is improper.

## IV.   GROUND 3: PLAINTIFF'S COMPLAINT CONFORMS WITH PLEADING REQUIREMENTS FOR DATES

### A. Remedy Sought: Strike Complaint

Defendants argue in Ground to Strike #3 that the Complaint should be stricken

in its entirety because (1) certain events do not include dates, and (2) the events are "out of chronological order." The Defendants do not seek to dismiss the complaint based on these grounds.

### B. **Inclusion of Material Dates & Compliance with Fed. R. Civ. P. 8(a)**

A claimant must only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 only requires "the bare minimum a plaintiff must set forth in his complaint." *McCurry v. Metro. Life Ins. Co.*, 208 F. Supp. 3d 1251, 1255 (M.D. Fla. 2016). "Rule 8 does not require a plaintiff to plead with the greatest specificity it can." *Punta Gorda - Charlotte Harbor Dev., LLC v. Allstate Ins. Co.*, No. 2:08-cv-719-FtM-29SPC, 2009 U.S. Dist. LEXIS 102878, at *5 (M.D. Fla. Oct. 20, 2009) (citing *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995)).

Defendants allege that Plaintiff fails to plead the dates of different events and uses events out of chronological order to "distort the truth." This is a steep allegation but carries no legal authority or argument to support such a claim. Indeed, plaintiffs have no legal obligation to plead any date in a complaint. *Skye v. Maersk Line, Ltd. Corp.,* No. 11-21589-CIV, 2011 U.S. Dist. LEXIS 110917, at *10 (S.D. Fla. Sep. 28, 2011).

Nonetheless, Plaintiff's factual allegations include 93 factual paragraphs (Compl. ¶ 17 - 110). Of these 93 paragraphs, Defendants have taken issue with a mere four (4) paragraphs. Defendants claim that the complaint is missing dates to establish

when Plaintiff immigrated to the United States (id. ¶ 17), when he got married (id. ¶ 18), that he applied for a visa waiver based on that marriage (id. ¶ 19), and that USCIS had a delay in processing immigration applications due to the pandemic[2] (id. ¶ 20). Defendants failed to identify any reason why these dates were necessary for compliance with Rule 8, nor could they, as none of the allegedly "missing" dates are material to the allegations, nor does their absence violate Rule 8 in any way.

In the same motion, Defendants fail to mention that every allegation that has to do with the contact between the parties and conduct attributed to the Defendants has dates pled. Indeed, the complaint cites numerous dates starting on March 22, 2022, when Plaintiff first submitted an application on Indeed.com to the Medical Practice's job opportunity, (id. ¶ 26), and continues chronologically until July 12, 2022, when Dr. Jean Charles encountered Plaintiff in the parking lot and identified that he had been accused of trafficking Plaintiff. (Id. ¶ 108). The dates cited are more than enough to meet the requirements of Rule 8 and placed Defendants on notice of the allegations and events at issue.

Further, Defendants claim that Plaintiff pled events that were not in chronological order is not only non-sensical, but is it is plainly debunked by reading the complaint, which is in chronological order.[3] Defendants cite nothing more than a

---

[2] It is common knowledge worldwide that the COVID-19 pandemic began in March of 2020 and society has continued to feel the effects of the pandemic for multiple years after.

[3] Defendants go as far as to claim that Plaintiff has alleged that he was legally in the United States and was authorized to work. Plaintiff has not pled these allegations; rather, Plaintiff clearly pled that he did not have work authorization and was an immigrant at the time he applied for the position with Medical Practice. Defendants disingenuously argue this point here in Ground to Strike #3, but in Ground to Strike #1, Defendants argued the opposite, claiming that striking the complaint was

conclusory, unsubstantiated claim to the contrary.

### C. **Misunderstanding of Fed. R. Civ. P. 9(f)**

Defendants allege that Plaintiff has violated Fed. R. Civ. P. 9(f) for not providing dates and presenting items out of chronological order. But this is a misunderstanding of Rule 9(f). "Rule 9(f) does not require the pleader to set out specific allegations of time and place; it merely states the significance of these allegations when they are actually interposed." *Skye,* No. 11-21589-CIV, 2011 U.S. Dist. LEXIS 110917, at *10. "Under Rule 9(f), *if* a party asserts that his claim or counterclaim arose at a certain time or place, he must do so accurately" so that the opposing party may rely on that date or place for their own substantive motions to challenge statute of limitations, jurisdiction, or similar matters based on these facts. *Id.* at *9-10. (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1308 (3d ed. 2004)).

Defendants have made no claims in their motion that dispute the accuracy of the dates and location alleged in the complaint, nor have they relied on these facts to allege anything more than four minor paragraphs lacked a date. As such, a motion to strike erroneously based on this premise must be denied.

## V.   **GROUNDS 4 & 8: PLAINTIFF HAS NOT CONFLATED TWO PARTIES & HAS NOT PLED A SHOTGUN PLEADING**

### A. Remedy Sought: Strike Complaint

Defendants argue in Ground to Strike #4 that the Complaint should be stricken

---

warranted by Plaintiff's illegal status and lack of work authorization.

in its entirety because Plaintiff has not pled the individual acts of each Defendant with specificity.  Defendants argue in Ground to Strike #8 that the Complaint should be stricken in its entirety as a shotgun pleading.   The Defendants do not seek to dismiss the complaint based on these grounds.

B. **The Complaint is not a Shotgun Pleading**

As previously stated, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff falls short of Rule 8's requirements by failing "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).  A complaint that violates Rule 8(a)(2) is frequently referred to as a "shotgun pleading." *Weiland*, 792 F.3d at 1320. Generally, one form of a "shotgun pleading" is when a complaint fails to provide a defendant adequate notice of the claims against them, as well as the grounds upon which each claim rests, by alleging multiple counts that adopt all the allegations from the previous counts. Id. at 1321.

In *Weiland*, the complaint re-alleged all the factual allegations at the beginning of each count, and based on this, the district court dismissed this as a shotgun pleading. *Id*. at 1324. The Eleventh Circuit overturned this however, finding that dismissal of the claim as a shotgun pleading was an abuse of discretion after doing a deeper analysis into whether what was pled met the purpose of Rule 8 – namely, to provide the defendant(s) adequate notice of the claims against them, as well as the grounds upon

which each claim rests. *Id*. at 1324, 1326. In making their decision, the Eleventh noticed that the counts precisely parceled out and identified the facts relevant to each material claim. *Id*. at 1324. Further, the Court noted that it was instructive that the defense did not file a motion for a more definite statement under Rule 12(e), or assert that they were having trouble "knowing what was alleged and why they were liable for doing it." *Id*. The Court found that determining which of the factual claims were relevant to the case at hand was hardly a challenge given the organization of the factual section of the complaint and applicable sub-titles. *Id*. at 1325. Ultimately, the court found that despite the inclusive statement or re-alleging all paragraphs, the counts "adequately put [defendants] on notice of the specific claims against them and the factual allegations that support those claims" and therefore met the requirements of Rule 8(a)(2). *Id*. at 1326.

Defendants identify that there are four types of shotgun pleadings, but fail to identify which one they are claiming this complaint falls under. The closest to clarity is that Defendants show that Plaintiffs incorporated Paragraphs 1-109 into each count. But this is not the shotgun pleading identified in *Weiland*.[4] Further, as was identified in *Weiland*, the counts in this matter clearly delineate the facts relied upon for each count and "adequately put [defendants] on notice of the specific claims against them and the factual allegations that support those claims" to meet the requirements of Rule

---

[4] *Weiland* identified a shotgun pleading was "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."

8(a)(2). *See id.* at 1326.

### C. **The Complaint Does Not Conflate the Defendants**

Defendants allege, without any specificity or legal authority, that Plaintiff has not pleaded the individual bad acts of each defendant. This is not correct. As will be explained in further detail in the next section, Plaintiff filed specific claims against each defendant and spelled out the specific allegations against each.

## VI.   GROUND 5: COUNTS I-IV ARE NOT REDUNDANT

### A. Remedy Sought: Strike Complaint

Defendants argue in Ground to Strike #5 that the Complaint should be stricken in its entirety because Counts I and II are redundant and Counts III and IV are redundant. The Defendants do not seek to dismiss the complaint based on these grounds.

### B.  There is No Redundancy

The Trafficking Victims Protection Reauthorization Act ("TVPRA") allows a private cause of action in two scenarios: (1) against the perpetrator, known as "perpetrator liability", and (2) against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" a violation of this chapter, known as "beneficiary liability". 18 U.S.C. § 1595(a). Violations of this chapter include forced labor, 18 U.S.C. § 1589(a), and trafficking with respect to peonage, slavery, involuntary servitude, or forced labor, 18 U.S.C. § 1590(a). *See Doe*

*v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021) (Under the TVPRA, a trafficking victim may sue a trafficking perpetrator *as well as* whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of the TVPRA).

Count I plead that both Defendants are liable to Plaintiff for *perpetrator liability*. In other words, Dr. Jean Charles, as well as the Medical Practice, were perpetrators of forced labor, pursuant to 18 U.S.C. § 1589(a). Count II plead that the Medical Practice is also liable to Plaintiff for *beneficiary liability*, in that it knowingly benefited attempted or conspired to benefit, financially or by receiving anything of value from participation in a venture which it knew or should have known has engaged in forced labor.

Additionally, Count III plead that both Defendants are liable to Plaintiff for *perpetrator liability*. In other words, Dr. Jean Charles, as well as the Medical Practice, were perpetrators of labor trafficking as defined in 18 U.S.C. § 1590(a). Count IV plead that the Medical Practice is also liable to Plaintiff for *beneficiary liability*, in that it knowingly benefited attempted or conspired to benefit, financially or by receiving anything of value from participation in a venture which it knew or should have known has engaged in labor trafficking as defined in 18 U.S.C. § 1590(a).

Each count was plead with specificity, there were no redundancies, and as such, this ground to strike must be denied.

## VII.   GROUND 6: PLAINTIFF DID NOT HAVE OBLIGATION TO

## ATTACH DOCUMENTS TO COMPLAINT

### A. Remedy Sought: Unknown

Defendants argue in Ground to Strike #6 that the Plaintiff did not attach a copy of referenced documents to the complaint.  The Defendants do not specify if they are seeking to strike or to dismiss the complaint based on these grounds.

### B.  Documents Not Required to be Attached to Complaint

Defendants claim that the complaint must be stricken and/or dismissed because Plaintiff did not attach and incorporate as an exhibit an advertisement, two emails, and an unsigned job offer.  But it is well-established that a plaintiff is not required to attach a copy of exhibits to a complaint.  *See, e.g., Manicini Enters. V. Am. Express Co*., 236 F.R.D. 695, 698 (S.D. Fla. 2006) (holding that a plaintiff's failure to attach purported written contracts to complaint asserting breach of contract did not warrant dismissal for failure to state a claim); see also *Punta Gorda*, No. 2:08-CV-719-FtM-29SPC, 2009 U.S. Dist. LEXIS 102878 at *2 ("Failure to attach the contract as an exhibit is not fatal to the Amended Complaint . . . [because] Rule 8 does not require a plaintiff to plead with the greatest specificity it can.").

Defendants MTD cites *Sprengle v. Smith Mar. Inc.* and *Harvest Moon,* stating that these two cases stand for the requirement that "[a] document should be attached when, in fairness to the defendant, the plaintiff files a complaint alleging a cause of action based on it."  Neither case is relevant to this matter.  *Sprengle* discusses when the incorporation by reference doctrine applies, stating that it does not apply unless the referenced documents are so central to the claim that they serve as a basis for the

complaint.  *Sprengle v. Smith Mar. Inc.,* 660 F. Supp. 3d 1337, 1351 (M.D. Fla. 2023) (citing *Adamson v. Poorter*, No. 06-15941, 2007 U.S. App. LEXIS 23577 at *2 (11th Cir. Oct. 4, 2007).  Further, *Harvest Moon* discusses[5] the incorporation by reference doctrine and finds that the defendant attaching a document to a motion to dismiss does not cause the motion to be converted to a motion for summary judgment.  *Harvest Moon Distribs. v. S.-Owners Ins. Co.*, 493 F. Supp. 3d 1179, 1183 n.2 (M.D. Fla. 2020) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Plaintiff has no obligation to attach evidence to his complaint and as a result, this ground for the motion to strike and/or dismiss must be denied.

## VIII.   GROUND 7: PLAINTIFF'S EQUITY CLAIMS ARE NOT BARRED BY THE DOCTRINE OF "UNCLEAN HANDS"

### A. Remedy Sought: Unknown

Defendants argue in Ground to Strike #7 that the Plaintiff's complaint should be barred pursuant to the doctrine of "unclean hands."  The Defendants do not specify if they are seeking to strike or to dismiss the complaint based on these grounds.

### B.  "Unclean Hands" is an Affirmative Defense

At the heart of any TVPRA claim is the fact that victims of trafficking are individuals who have been exploited and coerced through their vulnerabilities. Plaintiff has not plead that he willingly committed criminal acts; rather, he has plead

---

[5] Although Defendants pin cite is to page 1181, this is incorrect.  The correct pin cite is at page 1183, n.2.

that he was the victim of trafficking, which removes the *mens rea* from the act.

"Unclean hands" is an affirmative defense and should not be addressed at this stage of the litigation. *See Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225 n.8 (11th Cir. 2016) ("Generally, the existence of an affirmative defense will not support a motion to dismiss."); *Ventrassist Pty, Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1286 (S.D. Fla. 2005) (a motion to dismiss is not the appropriate forum for an affirmative defense and "plaintiffs are not required to negate an affirmative defense in their complaints").

"To assert an unclean hands defense, a defendant must show that (1) the plaintiff's wrongdoing is *directly related"* to her claimed injury, and "(2) the defendant was personally injured by the wrongdoing." *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) (citing *Calloway v. Partners Nat'l Health Plans,* 896 F.2d 446, 450-51 (11th Cir. 1993)). Defendants have failed to articulate how they meet the elements based on the allegations contained within the four corners of the Complaint. As such, this motion to dismiss and/or strike must be denied.

## IX.    GROUND 9: COMPLAINT IS NEITHER UNCESSARILY DEROGATORY NOR INFLAMMATORY

### A. Remedy Sought: Strike Complaint

Defendants argue in Ground to Strike #9 that the Complaint in its entirety should be stricken because they are "inflammatory and derogatory statements" that are throughout the document. Further, Defendants state that these allegations are "scandalous, impertinent, and immaterial." The Defendants do not seek to dismiss

the complaint based on these grounds.

### B. The Allegations are Neither Inflammatory nor Derogatory

Plaintiff has accused Defendants of labor trafficking.  This is not a pleasant subject matter, yet, accusing a defendant of criminal acts does not mean that it is "inflammatory" or "derogatory."  In one statement, Defendants identify the following as the statements at issue, and in another statement, Defendants state that the allegations are numerous, without identifying which statements are at issue.  Plaintiff is only able to address those identified:

**Para 3** – *"Dr. Jean-Charles profited from this illicit operation while his victims remained desperate, scared, and poverty stricken."* Paragraph 3 is an introductory sentence that addresses the element that Dr. Jean Charles was receiving "something of value" from the labor trafficking venture he was participating in with the Medical Practice.  Labor trafficking is both criminal and illicit activity.  This falls squarely within the elements of the TVPRA's beneficiary liability claims identified in Counts II an IV.  *See* 18 U.S.C. § 1595(a).

**Para 11** – *"[Plaintiff] was a victim of labor trafficking. [Plaintiff] fears humiliation, retaliation, and potential prosecution for what occurred while he was exploited by Defendants."*  Paragraph 11 was plead to establish the necessary factors necessary to bring a motion for leave to proceed under a pseudonym; to-wit: he was a labor trafficking victim, he fears humiliation, retaliation, and prosecution, and the criminal acts that may subject him to prosecution occurred because he was

19

exploited by Defendants (not because he chose to commit these acts of his own free will).  Indeed, Plaintiff did bring such a motion, received a decision from this Court, and is still ongoing in the appellate review process of the same.

**Para 66** – *"When mistakes were made, he was ominously scolded instead of taught how to correct the mistake."*  Paragraph 66 addresses the fact that the work Plaintiff was doing for Defendants was not an unpaid internship in which he received the gift of knowledge.  Instead, this element goes to show that instead of learning and teaching, Dr. Jean-Charles scolded him in a way that caused him to experience fear and apprehension.  This is crucial to the coercive tactics being used to maintain Plaintiff as a victim in Defendants' labor trafficking scheme.

**Para 69** – *"Dr. Jean-Charles used humiliation in his "teaching" approach, calling out and embarrassing his employees and interns in front of their colleagues, to include Plaintiff."*  Paragraph 69 also addresses that Plaintiff was not engaged in an unpaid internship or learning opportunity.  Rather, Dr. Jean Charles used coercive tactics to embarrass Plaintiff and other employees and interns.  By both experiencing this, as well as watching others experience this treatment, the conduct served as a tactic to coerce compliance and obedience in Plaintiff.  As will be further explored and proven in discovery, this is a common tactic amongst traffickers.

Each of these statements is relevant to the case and the elements Plaintiff must

prove. Defendant has defined "scandalous," "impertinent," and "immaterial," but has failed to explain how these allegations meet those definitions. Without any specifics or argument, and with clear purpose and relevance to the allegations made, this Court must deny this ground to strike.

## X. GROUND 10: PLAINTIFF HAS ADEQUATELY PLED THAT THE MEDICAL PRACTICE WAS THE ALTER-EGO OF DR. JEAN CHARLES

### A. Remedy Sought: Unknown / Strike Allegation

Defendants argue in Ground to Strike #10 that the Plaintiff's complaint makes two legal conclusions without factual support. The Defendants do not specify if they are seeking to strike or to dismiss the complaint based on these grounds, although logically, it would appear this is likely a motion to strike the individual allegation(s).

### C. The Complaint Adequately Pled Alter-Ego

Defendants allege error with Plaintiff's allegation that "JC Medical Practice is the alter-ego of Dr. Jean-Charles" (Compl. ¶ 39), claiming that this is an unsupported legal conclusion. Ironically, Defendants offer their own, unsupported and unsworn factual allegations that are outside the four-corners of the complaint (MTD, page17, footnote 7).

The alter-ego allegation is pled in compliance with Rule 8(a). Additionally, it is pled that Dr. Jean Charles was the sole, licensed doctor at the Medical Practice (id. ¶ 37) and Dr. Jean Charles had final decision-making authority over all matters of this practice (id. ¶ 38). Dr. Jean Charles was the one that changed Plaintiff's status from

employee to "volunteer) (id. ¶ 46), changed the payment structure from compensation to gift cards (id. ¶ 48), and kept offering him the promises of payment and opportunity (id. ¶¶ 54, 76, 84, 101). When Plaintiff sought to receive his promised compensation, the office employees deferred to Dr. Jean Charles (id. ¶ 79). When Plaintiff's family member reached out and notified Dr. Jean Charles that he was aware Dr. Jean Charles was labor trafficking Plaintiff, it was Dr. Jean Charles that attempted to bribe Plaintiff and buy his silence (id. ¶¶ 103-05). In totality, these allegations plausibly state an alter-ego claim.

### D. The Complaint Adequately Pled that Dr. Jean-Charles Operated an Illicit Labor-Trafficking Operation

Defendants allege that Plaintiff has stated that the Medical Practice was an "illicit operation" (Compl. ¶ 3). The entire complaint paints a picture of a medical practice that lured in Plaintiff with promises of compensation, relocation reimbursement, immigration help, and learning opportunities so that he could match a residency program. Once he was working for Medical Practice, the complaint details the deception, where Plaintiff was being exploited and used to make the Medical Practice money while he was not paid. Plaintiff continued to be maintained in this practice under false promises and deception. This plausibly is an "illicit operation" that has been alleged to be engaged in labor trafficking, a violation of state and federal law.

Without any legal authority to the contrary, Defendants' motion must be denied.

22

## XI.   GROUND 11: FACTUAL INCONSISTENCIES DO NOT PROVIDE GROUNDS TO STRIKE OR DISMISS A COMPLAINT

### A. Remedy Sought: Strike Complaint

Defendants argue in Ground to Strike #11 that the Complaint in its entirety should be stricken because some of the allegations allegedly contradict each other. The Defendants do not seek to dismiss the complaint based on these grounds.

### B. Factual Determinations are not Proper at the Pleading Stage

Defendants identify several paragraphs that they allege are "contradictory." Without legal authority or basis, Defendants assert this is a basis to strike the entire complaint. Plaintiff disagrees with Defendants' opinion about the claims, however, regardless, this is the purpose of discovery. It is not a basis to strike a claim, much less an entire complaint.

Additionally, should the Court entertain Defendant's request, this type of determination would constitute a factual finding, which is improper at the pleading stage. *N. Am. Clearing, Inc. v. Brokerage Comput. Sys.*, No. 6:07-cv-1503-Orl-19KRS, 2009 U.S. Dist. LEXIS 137359, at *11 (M.D. Fla. Mar. 31, 2009).

## XII.   DEFENDANTS SUFFICIENTLY PLED A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendants broadly state that several of the Counts in the complaint fail to state a claim upon which relief can be granted but fail to allege with any specificity what the legal basis of that assertion is, or what is lacking from Plaintiff's pleading, save one fact. The one noted issue is that Defendants erroneously claims that Plaintiff does not

identify what the threatened abuse of law or legal process was in the complaint.

Plaintiff alleges that directly after he began working, Dr. Jean-Charles told Plaintiff that he should not have told anyone about his lack of work authorization and that this was a "dangerous and delicate matter." (Compl. ¶ 46). Given that Plaintiff was present to observe the body language, tone, and context of the conversation, Plaintiff alleged that he understood this statement to be a "veiled threat" that Dr. Jean-Charles would contact USCIS and have him reported for immigration crimes. (Id. ¶ 47). When taken in a light most favorable to the non-moving party, these allegations adequately allege that Plaintiff was threatened with abuse of law or legal process. Consequently, Defendants' motion to dismiss should be denied.

## XIII. HAVE NO ENTITLEMENT TO STATUTORY ATTORNEY'S FEES AND COSTS

Defendants attempt to assert entitlement to statutory attorney's fees pursuant to the TVPRA, 18 U.S.C. § 1595(a). and Fair Labor Standards Act, 29 U.S.C. § 216(b); but Defendants is not entitled to recover attorney's fees or costs under either.

The TVPRA states, "**[a]n individual who is a victim** of a violation of this chapter may bring a civil action . . . in an appropriate district court of the United States and **may recover damages and reasonable attorneys fees**." 18 U.S.C. § 1595(a) (emphasis added). The plain text of the statute clearly shows that this statute does not provide attorney's fees to the prevailing party; rather, it is only available to a prevailing plaintiff. Defendants have no eligibility to receive such fees or costs.

The Fair Labor Standards Act states that "[t[he court in such action shall, in

addition to any judgment awarded to the plaintiff or plaintiffs, allow **a reasonable attorney's fee to be paid by the defendant, and costs of the action**."  29 U.S.C. § 216(b) (emphasis added).  The plain text of the statute clearly shows that this statute does not provide attorney's fees to the prevailing party; rather, it is only available to a prevailing plaintiff.  Defendants have no eligibility to receive such fees or costs.

In addition, Defendants claim entitlement to statutory fees pursuant to Fla. Stat. § 448.08, which allows for attorney's fees for unpaid wage cases litigated in Florida State courts.  But this is a case before the Middle District of Florida and Plaintiff has not alleged a state law claim for unpaid wages.  Therefore, this claim is not relevant to this litigation and provides no path to attorney's fees for Defendants.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Strike, or Alternatively to Dismiss, Should be Denied.  Should this Court grant this motion, Plaintiff requests that be done without prejudice and Plaintiff seeks leave to amend the Complaint to plead additional facts to meet the pleading standard.[6]

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 8, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

---

[6] "The court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).

DATED: <u>May 8, 2024</u>                       /s/ *Lisa D. Haba*
                                         Lisa D. Haba
                                         The Haba Law Firm, P.A.
                                         1220 Commerce Park Dr., Suite 207
                                         Longwood, FL 32779
                                         (844) 422-2529
                                         lisahaba@habalaw.com

                                         *Counsel for Plaintiff*