# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JOHN DOE, a pseudonym,

    *Plaintiff*,

-vs-

GUTTERIDGE JEANCHARLES, M.D., P.A., a Florida Corporation, and GUTTERIDGE JEAN-CHARLES, M.D., an individual,

    *Defendants*.

CASE NO.: 6:24-cv-00034-RMN

## RENEWED MOTION TO MODIFY OR VACATE ORDER BY MAGISTRATE JUDGE DENYING LEAVE TO PROCEED PSEUDONYMOUSLY FOR REVIEW BY DISTRICT COURT JUDGE

Plaintiff, JOHN DOE ("Plaintiff"), by and through undersigned counsel, hereby files this Motion to Modify or Vacate Order by Magistrate Judge Denying Leave to Proceed Pseudonymously for Review by District Court Judge, and submits as follows:

### PROCEDURAL HISTORY

On January 5, 2024, Plaintiff filed a complaint against GUTTERIDGE JEANCHARLES, M.D., P.A., and GUTTERIDGE JEAN-CHARLES, M.D. ("Defendants") in the Middle District of Florida. Plaintiff alleged multiple violations of the Trafficking Victims Protection Reauthorization Act (TVPRA), as well as other federal and state claims. (Dkt. 1).

On January 19, 2024, Plaintiff filed a Motion for Leave to Proceed

Pseudonymously (Dkt. 13). On February 20, 2024, this Court denied Plaintiff's Motion for Leave to Proceed Pseudonymously and ordered Plaintiff to file an Amended Complaint with Plaintiff's name by March 5, 2024 (hereinafter "the Order") (Dkt. 15). On March 5, 2024, 14 days after receipt of the Order, Plaintiff filed a Notice of Appeal in relation to the order denying leave to proceed pseudonymously (Dkt. 18).

On April 23, 2024, the Eleventh Circuit denied the appeal for lack of jurisdiction because the appeal was required to be decided by the District Court Judge prior to the appeal could be ripe to be considered by the Eleventh Circuit. *See Nestor v. VPC3 II LLP*, No. 23-10331, 2024 U.S. App. LEXIS 6145, at *3 (11th Cir. Mar. 14, 2024) (citing *Donavan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1066-67 (11th Cir. 1982)) ("When a magistrate judge is proceeding under the supervision of a district court pursuant to 28 U.S.C. § 636(b), his actions "are not final orders and may not be appealed until rendered final by a district court."). Provided that Plaintiff's objection was timely filed within 14 days, Plaintiff now seeks appellate review by the District Court Judge. On May 22, 2024, the mandate was issued and judgment was entered by the Eleventh Circuit Court of Appeals. (Doc. 48).

On April 23, 2024, the parties filed their agreed consent to have the Magistrate Judge conduct all proceedings in this matter (Doc. 33). On April 25, 2024, this Court ordered that this case be transferred to the Magistrate Judge. On April 26, 2024, this matter was transferred to the Magistrate Judge.

## STATEMENT OF THE FACTS

Plaintiff is a physician from Egypt, who entered the U.S. on a J-1 Exchange

Visitor Visa to seek advanced training in a U.S. medical residency program. (Doc. 1 ¶ 17). While in the U.S., Plaintiff lost status and accumulated unlawful presence. (Id. ¶ 3). Through his wife, he was able to apply for a visa waiver and work authorization to accompany his application to adjust his status and become a permanent resident. (Id.) While these applications were pending, Plaintiff did not have work authorization and therefore could not "match" a residency program or legally be employed. (Id. ¶ 23). As can be inferred, during this time, Plaintiff had vulnerabilities due to his immigration status, his financial status, and his fear of not being about to "match" a residency program to pursue his dream of being a doctor.

Plaintiff applied for a job at Gutteridge JeanCharles, M.D., P.A. (hereinafter "JC Medical Center") with the intent to obtain employment. (Id. ¶¶ 25-27). Dr. Jean-Charles offered Plaintiff employment as a "Clinical Assistant" and represented that he would "shadow, learn, train, and be taught about the practice of medicine" in exchange for compensation (Id. ¶ 28.a.). Dr. Jean-Charles deceitfully led Plaintiff to believe that the JC Medical Center had helped many similarly situated doctors get into residency programs, he would pay Plaintiff compensation, he would reimburse moving expenses, he would write a letter to USCIS to help speed up the immigration process, and he knew that Plaintiff could not lawfully work yet but was willing to overlook that and hire him anyways (Id. ¶ 27).

It was not until Plaintiff incurred the tremendous cost of relocating himself and his family across the United States that Defendants changed the offer and refused to pay Plaintiff. (Id. ¶ 27, 28, 33-34, 40, 45-55). Defendants maintained Plaintiff's

employment and labor at JC Medical Center through fraudulent promises that Defendants would pay Plaintiff in the future for the hours worked through gift cards (Id. ¶¶ 27, 28, 34, 77), he would give him a salary and future earning potential (Id. ¶¶ 83-85), he would help him with immigration (Id. ¶ 77), and he would help him with getting into a residency program (Id. ¶¶ 27, 35, 77).

For no pay (except one $200 gift card), Dr. Jean-Charles and JC Medical Center had Plaintiff working as a physician, seeing over half the daily intake of patients without adequate supervision. (Id. ¶¶ 56, 73-75, 90). All of these patients were fraudulently being billed at the rate for Dr. Jean-Charles. (Id. ¶¶ 7-9). Dr. Jean-Charles also had Plaintiff add Dr. Jean-Charles' electronic signature to orders for labs and referrals without oversight or supervision. (Id. ¶ 81). Dr. Jean-Charles did not consult with Plaintiff on patient care and only reviewed files after treatment was rendered, if at all. (Id. ¶¶ 73, 82).

Dr. Jean-Charles finally terminated Plaintiff when he realized Plaintiff's family member knew that he was exploiting Plaintiff and confronted him (Id. ¶¶ 103-108). Dr. Jean-Charles attempted to buy Plaintiff's silence by handing him $500 cash and a $450 gift card (Id. ¶ 105) and attempted to "rewrite" the facts by telling Plaintiff he did not know that Plaintiff did not have work authorization when he hired him at the time of his termination. (Id. ¶ 17).

## ARGUMENT

### I. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A), a district court may designate a magistrate

4

judge to hear and determine any non-dispositive pretrial matter. *Roberts v. Freedom Mortg. Corp.*, No. 22-14241, 2023 U.S. App. LEXIS 30877, at *1 (11th Cir. Nov. 21, 2023) (citing 28 U.S.C. § 636(b)(1)(A)). If a party disagrees with any such order (and the Magistrate Judge has not been consented to by the parties at the time the Order is issued), the litigant must seek appellate review of the magistrate judge's ruling on the non-dispositive pretrial order from the district court within 14 days after service of the order. Fed. R. Civ. P. 72(a); *Douse v. Neal Cmtys. of Sw. Fla., Inc.*, No. 21-10855, 2022 U.S. App. LEXIS 19541, at *5 (11th Cir. July 15, 2022) (citing *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980)). Upon consideration, a district court may modify or vacate a magistrate judge's order to the extent that the order is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020).

## II. TIMELINESS

When a party seeks to challenge a magistrate judge's order on a non-dispositive motion, the challenging party must file its notice of objection within 14 days after service of the order. Fed. R. Civ. P. 72(a); *Douse*, 2022 U.S. App. LEXIS 19541, at *5. Plaintiff in this case filed a Notice of Appeal on the 14th day after service of the order. (Dkt. 18). As such, Plaintiff has timely filed its notice of objection and appellate review. The fact that Plaintiff submitted the request to the Eleventh Circuit instead of the District Court does not negate that Plaintiff timely filed an objection seeking appellate review.

In *In re Gonzalez*, the district court referred the case to the magistrate judge for

5

a ruling on all pretrial, non-dispositive matters, pursuant to 28 U.S.C. § 636(b)(1)(A), and for a Report and Recommendation on any dispositive matters, pursuant to 28 U.S.C. § 636(b)(1)(B). *In re Gonzalez,* No. 1:20-mc-24628-GAYLES/REID, 2023 U.S. Dist. LEXIS 234290, at *1-2 (S.D. Fla. Dec. 21, 2023). In that case, on October 6, 2023, the magistrate judge issued an order on a non-dispositive matter. On November 6, 2023, the respondent appealed the magistrate judge's order to the United States Court of Appeals for the Eleventh Circuit. *Id.* at *2. The Eleventh Circuit dismissed the appeal for lack of jurisdiction since the appeal must first be heard by the district court. *Id.* The matter was then brought before the district court for a review of the magistrate judge's order to determine if the matter was "clearly erroneous or contrary to law." *Id.*[1]

In this case, Plaintiff timely filed a Notice of Appeal within 14 days and now seeks a ruling from the District Court on the merits of this objection.

### III. THE MAGISTRATE JUDGE'S ORDER WAS CLEARLY ERRORONEOUS AND CONTRARY TO LAW

#### A. Legal Standard to Allow a Party to Proceed Pseudonymously

Generally, a lawsuit is a public event. *In re Chiquita Brands Int'l Inc.*, 965 F.3d 1238, 1242 (11th Cir. 2020). There is a public interest in allowing society to scrutinize government functions, including open access to attend and observe both criminal and civil proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 599-600 (1980).

---

[1] Notably, the Notice of Appeal in *In Re Gonzalez* was filed within 30 days, not 14 days. Nonetheless, the District Court still evaluated this matter and issued a ruling on the merits.

"The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Doe v. Stegall*, 653 F.2d 180, 184 (5th Cir. 1981). Party anonymity does not inhibit the public interest to an open trial in the way that closure of a courtroom does; rather, the public can still attend and observe a trial while the Plaintiff proceeds under a pseudonym, thus preserving the constitutional interest in ensuring that "[w]hat transpires in the courtroom is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

Although Fed. R. Civ. P. 10(a) requires the title of the complaint to name all the parties, this Court has held that a party is permitted to litigate under a pseudonym when it establishes "a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Frank*, 951 F.2d at 323; *Doe v. Neverson*, 820 Fed.Appx. 984, 986 (11th Cir. 2020); *Plaintiff B v. Francis,* 631 F.3d 1310, 1315 (11th Cir. 2011); *Stegall*, 653 F.2d at 186. Whether a party's right to privacy outweighs the presumption of openness should be evaluated by reviewing the totality-of-the-circumstances. *In re Chiquita Brands*, 965 F.3d at 1247 n.5; *Plaintiff B*, 631 F.3d at 1315.

In *Plaintiff B* (relying on *S. Methodist University Ass. of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979) (hereinafter "SMU")), this Court laid out the two-part test to determine if pseudonymity is appropriate. *Id.* at 1316 (citing *Stegall*, 653 F.2d at 186). **Part One** of the test analyzes if the plaintiff has a substantial privacy right. A substantial privacy right may exist where the plaintiff (1) is challenging

7

government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; **or** (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *In re. Chiquita Brands*, 965 F.3d at 1247 (emphasis added); *see also Plaintiff B*, 631 F.3d at 1316. ***Part Two*** of the test also requires the court to evaluate *all* other factors, including, but not limited to, if the plaintiff is a minor, if there was violence or threats of violence, or if there is a unique threat of fundamental unfairness to the defendant. *Id.* (citing *SMU*, 599 F.2d at 713); *In re Chiquita Brands*, 965 F.3d at 1247 (along with the *SMU* factors, a court should carefully review *all* the circumstances of a given case).

### B. The Magistrate Judge's Denial of Plaintiff's Motion to Proceed Pseudonymously was Clearly Erroneous and Contrary to Law

John Doe sought pseudonymity pursuant to the third *SMU* factor - that absent anonymity, he would be compelled to admit an intent to engage in illegal conduct and thus risk criminal prosecution. Plaintiff alleges that if he was required to file his true identity on the public docket, he would have to admit both an intent to violate Florida Statutes, as well as his actions in furtherance thereof, that make it a felony to practice medicine without a license (F.S. § 456.065), or to participate in insurance fraud (F.S. § 817.234).

### 1. The Magistrate Judge's Order Was Clearly Erroneous and Contrary to Law Regarding How it Weighed the Third SMU Factor as a Substantial Privacy Interest

A plaintiff's admission of illegal conduct, or the intent to engage in criminal conduct "unquestionably weighs in favor of anonymity." *Farmworker Ass'n of Fla., Inc.*

*v. DeSantis*, No. 23-cv-22655-ALTMAN/Reid, 2024 U.S. Dist. LEXIS 22904, at *9 (S.D. Fla. Feb. 8, 2024)) (noting that "courts have allowed plaintiffs to use fictitious names" where the plaintiffs have "had to admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct"); *Doe v. Strange*, No. 2:15-CV-606-WKW [WO], 2016 U.S. Dist. LEXIS 38248, at *7 (M.D. Ala. Mar. 24, 2016) (factor weighs in favor of pseudonymity when a plaintiff would have to allege engagement in criminal activity); *Free Speech v. Reno*, 98 Civ. 2680 (MBM), 1999 U.S. Dist. LEXIS 912, at *6 (S.D.N.Y. Jan. 27, 1999) (admitting an intention to engage in illegal conduct would expose plaintiff to *potential* criminal prosecution and civil penalties, which favors permitting plaintiff to proceed pseudonymously).

In the Order, the court correctly acknowledged that to meet Part One of the *Plaintiff B* two-part test for pseudonymity, John Doe was proceeding under the third *SMU* factor as the substantial privacy right. Incorrectly, the court found that the third *SMU* factor weighed against pseudonymity, stating that John Doe has not indicated there are any *pending* or *forthcoming* criminal prosecutions and finds that this factor therefore weighs against Plaintiff. To support this, the Court cited *Doe v. Fla. Gulf Coast Univ. Bd. of Trs.*, No. 2:23-cv-245-SPC-KCD, 2023 U.S. Dist. LEXIS 159478, at *3 (M.D. Fla. Sep. 8, 2023), referencing that the Motion for Leave to Proceed Pseudonymously was denied in part because the plaintiff did not indicate that "criminal charges were forthcoming or indicate pending criminal prosecution."

But *Fla. Gulf Coast* did not find that pending or forthcoming charges were a

9

necessary element to proceed under the third *SMU* factor. Rather, in *Fla. Gulf Coast* the plaintiff claimed that there was a risk of prosecution for two misdemeanors that were barred by the statute of limitations. *Id.* at *9. The Middle District found in *Fla. Gulf Coast* that the plaintiff was not at risk for criminal prosecution because the charges were time-barred; *Fla. Gulf Coast* did not find that there was a requirement that charges must be pending or forthcoming. The only standard established by *Fla. Gulf Coast* is that the potential charges cannot be impossible, such as being time-barred from prosecution.[2] In contrast, in this case, the potential criminal charges in this case are well within the statute of limitations and could absolutely be prosecuted – especially if assisted with an admission from the Plaintiff.

The trial court's interpretation is further "clearly erroneous and contrary to law" because it seeks to add words to the third *SMU* factor that are not there. The third *SMU* factor states that the plaintiff "would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *In re. Chiquita Brands*, 965 F.3d at 1247. A plain reading shows that the plaintiff need only be at risk of acknowledging an *intent* to engage in criminal activity, and that a criminal prosecution is a *risk*, not a certainty. *See id.*

The Order erroneously considered that John Doe did not challenge the validity or constitutionality of the two statutes. *See Farmworker Ass'n*, 2024 U.S. Dist. LEXIS 22904, at *3. In *Farmworker Ass'n*, the Court found that the third *SMU* factor weighed

---

[2] There is an appeal pending before the Eleventh Circuit at Case No. 23-13063 in this case.

in favor of plaintiffs that were challenging a newly formed statute. *Id.* This case addresses a narrow issue with a unique fact pattern that does not apply to the issues at hand and is not relevant to this Court's consideration on this issue, as no newly formed criminal statute is at issue.

If John Doe is to proceed in this matter, he would have to admit both his intent to engage in criminal conduct, as well as admit his prior conduct, which place him at substantial risk of being prosecuted for violations of F.S. § 456.065 and F.S. § 817.234. The Order was clearly erroneous, contrary to law, and should have found that this weighed in favor of granting pseudonymity. *See Id.* at *9 (citing *SMU*, 599 F.2d at 713).

### 2. *Part Two of the Plaintiff B Test Weighs in Favor of Pseudonymity*

Part Two of the *Plaintiff B* test asks the court to consider *all* other factors and considerations. *In re Chiquita Brands*, 965 F.3d at 1247 (along with the *SMU* factors, a court should carefully review *all* the circumstances of a given case). In support of additional factors, the Order acknowledged that John Doe has agreed to provide his identity to Defendants, subject to a protective order, which alleviates any unfairness presented to Defendants. The Court found this weighed in favor of pseudonymity.

Further, the Order identified that John Doe expressed that proceeding with his real name would cause him great embarrassment and humiliation because he is a victim of labor trafficking and fears reputational harm in the medical community. The Court cited *Doe v. Sheely*, 781 F. App'x 972, 974 (11th Cir. 2019) to state that "personal embarrassment" alone is not enough to proceed pseudonymously. The trial court was

11

"clearly erroneous and contrary to law" by evaluating and individually dismissing each factor instead of reviewing the factors in totality. For example, the Court cited *Sheely* to state that "personal embarrassment" alone did not allow for pseudonymity to be granted; but John Doe never sought for the Court to grant pseudonymity based on personal embarrassment as a stand-alone factor. Rather, John Doe offered the violation of a substantial privacy interest, combined with extraordinary embarrassment and humiliation given that he was a victim of labor trafficking, the well-founded fear of reputational harm, and the agreement to provide the Defendants with his identity so as not to prejudice their ability to defend the case.

Additionally, two factors were raised that were not mentioned in the Order as considered factors. First, John Doe identified in his Motion that Defendants threatened him that he could be reported to immigration if he did not remain silent, and Defendants used fraud and deceit to swindle and coerce John Doe into an impossible financial situation. Second, John Doe identified in his Motion that he was a victim of labor trafficking, which has been recognized by Congress to be a *severe form of trafficking in persons*. 22 U.S.C. § 7102. The coercion and control to compel a person, especially one in the medical field, is substantial and is not the same as mere embarrassment.

If the Order had weighed the factors in totality and consistently with existing law, it would have found that the *SMU* factor in Step One weighed in favor of granting Plaintiff pseudonymity. Further, the trial court would then have evaluated the totality of the circumstances in Step Two and found they weighed in favor of granting Plaintiff

12

pseudonymity. *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 66 (1st Cir. 2022) (error "occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.")

## CONCLUSION

John Doe requests that the District Court issue an order either vacating or reversing the Order issued by the magistrate judge denying leave to proceed pseudonymously and permit John Doe to proceed under a pseudonym.

## LOCAL RULE 3.01(G) CERTIFICATION

I, Lisa D. Haba, certify that on May 16, 2024, I conferred in good faith with opposing counsel, George Indest, by telephone. Attorney Indest has advised he objects to this motion.

## CERTIFICATE OF SERVICE

I, Lisa D. Haba, certify that on May 23, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Middle District of Florida, by using the CM/ECF system and counsel for all parties were electronically served through this system.

DATED: May 23, 2024

*/s/ Lisa D. Haba*
Lisa D. Haba (FBN 077535)
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
Telephone: (844) 422-2529
lisahaba@habalaw.com
*Attorney for Plaintiff*

13